The next matter on our calendar is Jean Marie Carozza-Sutter vs. J.P. Morgan. You may take the podium. Yes. You could speak into the microphone. He's going to show, he's going to make it a little better for you. Yes, you can take your mask off while you speak to us. Yes, it is. Thank you. Well, I'm here because I asked for this. Do you now regret asking for it? No. Just because I noticed this week that I do have a valid statement. This is regarding my mortgage. I think you're aware of that. You should assume we've read all the papers that were submitted to us. You should assume we've read all the papers that were submitted to us. Yes. Thank you. Well, again, I'm going to ask the same similar question. My document was weighted and forged without our knowledge. So we didn't know that this happened to us. I wrote a lot of it down because I'm nervous. Yes, it's okay. So I don't understand why they had to do that without letting us know. Well, if it was forged, they wouldn't have known and wouldn't have required to let you know anything. If it was really forged. It was really forged. We went, we were all sitting at the same table, signing all the same documents. I was right there. My son was with me. He's one and a half. He's 21. He's out there right now waiting for me downstairs. We could have fixed this years ago if we had known this was done to us. Okay. So when I applied for the modifications, which you're aware of, I was denied for years and years telling them I'd never signed a note. And I was freaking out, of course. When was the first time they told you you never signed the note? Back in 2009. And that went on and on and on. But wait. Do you think you signed the note? Oh, I know I did. Then why didn't you then, when you were told you didn't sign the note, bring an action or something? I mean, now it's 2022. This is an old case. Yes, because there are tactics for that. I was not aware of the tactics one could use. Right. But you're telling me now you were aware that they were arguing you didn't sign it since 2009 at least. And then in 2014, we didn't know what to do. And somebody advised us, well, because I couldn't find our documents. That was another part of this case. They never sent us our copies. When we signed everything, we were told, we'll send you your copies. And they never did. Because I don't, I don't, I'm not neat, perfect neat, but I know where to keep proper paperwork, you know. And I couldn't find them ever. So, there's a lot of, a lot of, a lot of deception of delays and things that, that tactics that I think you might have an idea of that go on. And finally we did have the documents. I couldn't believe it. I said, look, but it proves I did, I'm not lying, I did something. And it still went on and on with all kinds of delays in life. And I could not find, Your Honor, somebody to help me with the forged document part. Did you have a lawyer? I tried to find somebody. Yes, I found old, I got married letters from bankruptcy people. And they were helpful, they, they're helpful in their realm. But I was asking, well, what about these documents that caused this whole problem? All right, now let me... And I couldn't find anybody to represent me on that part of the deal. Let me explain how we work here. You were allowed five minutes. Oh, God. That's okay. You, you wanted to reserve one minute, which you're allowed. But, but we like to talk about the law, not the facts. So, your time really has expired. But I will let you keep the one minute for rebuttal and we'll hear from J.P. Morgan. Let's see what they say. You may have a seat right next to the podium. Good morning, Your Honors. Brian Smith on behalf of the Affiliate J.P. Morgan Chase Bank, N.A. As Your Honors are aware, the district court dismissed this action at the cleaning stage. The ruling was correct for several reasons, primarily because the only federal statute which the appellant cited, the rest of the Real Estate Settlement Procedures Act, she didn't state a claim under that statute, under 12 U.S.C. 2605. That statute would have required her to have pleaded that she sent a qualified written request to J.P. Morgan Chase Bank that they failed to respond or that the response they gave was... Claims that J.P. Morgan treated her badly from the inception of this mortgage. I understood, Your Honor, but her claim, at least the only claim under which the district court had original jurisdiction, was the rest of the claim. So, even if her allegations afford her the origination of the loan and her allegations regarding what I take to be she believes she was wrongfully denied her loan modification, even if those allegations are accurate, they would not make out a claim under RESPA. Moreover, any such claim as the district court found would be timeless. I think Your Honor pointed that out during Ms. Sutter's argument that, you know, we're talking about conduct that's alleged to have occurred in 2009. I caught one reference to 2014, which I actually don't think is in the complaint, but even if you use that as the benchmark, we're talking about a three-year limitations period on the RESPA claim, that would only get you to 2017. This actually was not filed until 2021. And the final ruling that the district court gave was once it's determined that the RESPA claim failed, it's declined to exercise jurisdiction over any claims arising under state law. I also think that ruling was correct because the case was at the cleaning stage and it was an appropriate use of discretion to decline supplemental jurisdiction at that point. And unless Your Honor has any further questions for me, I've said what I need to say. Thank you. Thank you. Ms. Perroza-Sutter, you can—let me explain to you what J.P. Morgan said. You're—well, don't—this is your day in court, so don't cry. That's not allowed. He said you needed better counsel when you started this. 2009, when you got that letter, you were supposed to do something to get the court's attention. And now, all these years later, you're in federal court and there's no basis. I don't know if you heard the discussion we just had about immigration. There's no basis now for us to exercise jurisdiction. Your Honor, as I told you, no one would represent me. All through those years, I was asking, well, what about this part? What about the bad document? It's ruined my credit forever. It's ruined my reputation. And I didn't do it. Yeah, I understand your frustration. But we don't have a basis now to adjudicate your case. We just don't have a basis. I'm sorry to tell you that. Thank you, though, for pursuing it. That concludes our calendar. I will ask the clerk to adjourn court. Court is adjourned.